CENTRAL OF GEORGIA RAILWAY COMPANY *v.*
MURPHEY & HUNT.

1. Civil Code, §§ 2317 – 2318, provides: " When any freight that has been shipped, to be conveyed by two or more common carriers to its destination, where, under the contract of shipment or by law, the responsibility of each or either shall cease upon delivery to the next ' in good order,' has been lost, damaged, or destroyed, it shall be the duty of the initial or any connecting carrier, upon application by the shipper, consignee, or their assigns, within thirty days after application, to trace said freight and inform said applicant, in writing, when, where, how, and by which carrier said freight was lost, damaged, or destroyed, and the names of the parties and their official position, if any, by whom the truth of the facts set out in said information can be established. If the carrier to which application is made shall fail to trace said freight and give said information in writing, within the time prescribed, then said carrier shall be liable for the value of the freight lost, damaged, or destroyed, in the same manner and to the same extent as if said loss, damage, or destruction occurred on its line." *Held*, that the provisions of these sections are not unreasonable and arbitrary, either as to the substantial requirements thereof, or as to the time within which the requirements must be met. Nor are they such a regulation of interstate commerce as to be beyond the power of the State. Nor do the sections infringe " the correlative liberty of silence." Nor do they amount to " compulsory private discovery " by " statutory terror." Nor are they unconstitutional and void for any other reason set forth in the present case.
2. An action under the provisions of the statute above quoted, brought in the name of the shipper, is well brought though it appears that the shipper is not the owner of the goods.
3. Even if the fact that it was impossible to obtain the information required by the statute within the time specified therein would relieve the carrier from liability, the evidence offered to show that it was impossible to so obtain the information did not have this effect, and was therefore properly rejected.
4. There was no error requiring the granting of a new trial.

Argued November 19, 1902. — Decided January 9, 1903.

Action for damages. Before Judge Reagan. Pike superior court. April 23, 1902.

*Hall & Cleveland* and *R. L. Berner*, for plaintiff in error.
*W. W. Lambdin*, contra.

Cobb, J. A. O. Murphey & Hunt, a partnership, brought suit against the Central of Georgia Railway Company, alleging that they had shipped over the lines of the defendant company a carload of grapes from Barnesville, Georgia, consigned to Rocco Brothers, Omaha, Nebraska; that the shipment was under a contract which provided that the responsibility of each carrier should cease

upon delivery "in good order" to the next carrier; that when the grapes reached Omaha they were in a damaged condition; the amount of the damages that the plaintiffs sustained by the failure to deliver the grapes in good order at their destination being set forth in the petition; that on August 20, 1897, the plaintiffs made to the defendant an application in writing, in which they requested the company to trace the freight and inform plaintiffs in writing when, where, how, and by which carrier the freight was damaged, and the names of the parties and their official position, if any, by whom the truth of the facts could be established; that the defendant failed to trace the freight and give the information within thirty days, as required by law; and that by reason of this conduct the defendant became indebted to the plaintiffs in the amount set out in the petition.   The defendant demurred to the petition, upon the following grounds: (1) Because the petition sets forth no cause of action, and under the allegations thereof the plaintiffs are not entitled to recover. (2) The contract referred to in the petition not being one for a through carriage, the petition is defective in that it does not allege that the loss or damage occurred on the defendant's road, nor is it alleged that the freight was not delivered to the next carrier in good order. (3) Because the act of the General Assembly, embraced in Civil Code, §§ 2317 – 2318, under which the plaintiffs' action is brought, is unconstitutional and void, in that it requires the defendant to furnish evidence to the plaintiffs for the purpose of a personal, private claim or lawsuit touching the liability of another corporation, with which liability the defendant is in nowise connected either by contract or by law. (4) Because the law under which plaintiffs' action is brought imposes upon the defendant the duty of hunting evidence with which plaintiffs can make out a claim against another carrier, and, in the event such evidence is not reported within a given time, the defendant is made responsible for the act of another carrier with which it had no connection in carrying the goods, either by contract or otherwise. "Such legislative act is not a proper classification of legislation, but is arbitrary and is a violation of the constitution of this State." (5) Because the act under which the suit is brought impairs the obligation of the contract between plaintiffs and defendant for carrying the goods; the defendant being, under the contract, exempted from liability for damages to goods beyond its own lines. (6) Because

the law in question requires the defendant to procure and report to plaintiffs certain information within a given time, and on failure to so report, then, without regard to whether such information could be obtained within the time prescribed, and without opportunity to the defendant to be heard, the act imposes upon the defendant the penalty of paying damages which were caused by another railway company with which the defendant had no connection by contract or otherwise; such law denying to the defendant "due process of law." (7) Because the law in question is in violation of the interstate-commerce clause of the constitution of the United States. (8) Because such law deprives the defendant of its property without due process of law. (9) Because the act is contrary to law, the constitution, and public policy, in that it seeks to obtain information by statutory compulsion, attaching a penalty to the failure to produce information which the various railroads are entitled to withhold, if they desire to do so, under the correlative liberty of silence guaranteed by the constitution. The demurrer was overruled, and the case proceeded to trial and resulted in a verdict in favor of the plaintiffs. A motion for a new trial filed by the defendant was also overruled. The defendant assigns error upon the judgment overruling the demurrer and the judgment refusing to grant a new trial.

1. This suit was brought under the provisions of the Civil Code, §§ 2317 – 2318, which are quoted in the first headnote. The petition set forth a cause of action if the law in question is valid. In passing upon the assignment of error complaining that the court erred in overruling the demurrer, it becomes necessary to determine only one question, and that is, whether this law is unconstitutional for any reason assigned in the demurrer. If it is a valid law, the other grounds of the demurrer not relating to the constitutionality of the law were not well taken. We do not think the statute is subject to any of the exceptions taken in the demurrer. It is too well settled now to admit of question, that when private property is "affected with a public interest," the owner of such property "grants to the public an interest in such use, and must, to the extent of that interest, submit to be controlled by the public for the common good, as long as he maintains the use." Munn v. Illinois, 94 U. S. 113. It is also equally well settled, that the incorporation of a railroad company by a State and the granting of

special privileges to carry out the object of incorporation, particularly the authority to exercise the State's right of eminent domain, and the obligation assumed by the acceptance of the charter to transport all persons and merchandise upon like conditions and for reasonable rates, affect the property and employment with a public use, and thus subject the business of the company to legislative control in the interest of the public.    Georgia Railroad Company *v.* Smith, 128 U. S. 174.    It becomes necessary to determine in the present case whether the statute in question is of such a character as to come within the principles just referred to.    A railroad company is not compelled to make a contract to forward goods beyond its own line.    *Coles* v. *Railroad Company,* 86 *Ga.* 251.    See also *State* v. *Railroad Company,* 104 *Ga.* 437.    But when it receives goods consigned to a point beyond the terminus of its own line, it undertakes to transport them to their destination, and if the goods are lost it will be liable therefor, in the absence of a contract otherwise limiting its liability.    *Falvey* v. *Railroad Company,* 76 *Ga.* 597 ; *Central Railroad Company* v. *Fruit Exchange,* 91 *Ga.* 389.    It may, however, make a contract for the transportation of goods beyond the terminus of its own line, and stipulate in such contract that its liability shall cease when the goods are delivered to the next carrier; thus making itself liable only for damages or loss occurring while the goods are in its possession.    *Central Railroad Company* v. *Avant,* 80 *Ga.* 195 ; *Richmond & Danville Railroad Co.* v. *Shomo,* 90 *Ga.* 500.    In many instances it is to the interest, not only of the shipper but also of the carrier, that the contract entered into should provide for a through shipment of goods to their destination over the connecting lines of the initial carrier.    In order to secure business where the goods are to be transported to a distant point, it is necessary that the carrier should have traffic arrangements with its connecting lines, by which the shipper may become entitled to a through bill of lading, securing transportation over all the lines between the initial point and the point of destination.    Especially is this true in regard to goods of a perishable nature.    A carrier which holds itself out to carry such goods would secure little custom from shippers of that class of goods unless it were in a position to give reasonable assurances that the goods would not be subjected, at the terminus of the initial carrier's line, to the delays incident to shipments upon

a bill of lading the undertaking of which is accomplished when the goods reach the terminus of the first carrier.

The carrier may, under the law, refuse to issue bills of lading to points beyond its own line, but a carrier that would adopt such a rule would do little business in the transportation of goods to distant points, especially at places where there were other competing carriers that would issue through bills of lading to points beyond their own lines. It thus being often to the interest of the carrier to issue a through bill of lading in order that it may secure business, and the law allowing the carrier in such cases to limit its liability to loss or damage while on its own line, is it an unreasonable requirement, when under such circumstances a loss occurs beyond its own line, that the initial carrier shall, upon demand, furnish to the shipper, within a reasonable time, information as to the place at which the loss or damage occurred? If a through contract were for the sole interest of the shipper, such a requirement might be said to be unreasonable; but when such a contract is at least for the joint interest of both in all cases, and in many instances the making of such a contract would be the only means of securing the business for the carrier, it does not seem to be beyond the bounds of reason to require the carrier to furnish to the shipper information as to the point at which his goods were lost or damaged. It is much easier for the initial carrier to obtain this information than it would be for the shipper. Carriers, through business arrangements with the connecting carriers, are so intimately associated with each other, and each one is so thoroughly conversant with the systems of the others, that it is much easier for a carrier to obtain this information than a shipper. In fact, it is a practical impossibility in many instances for the shipper to obtain the information himself, and a refusal or failure on the part of the initial carrier, or one of the connecting carriers, to undertake to locate the point at which the loss or damage occurred, amounts practically to a denial of redress to the shipper of goods that have been lost or damaged. The well-known fact that as a general rule the shippers, under such contracts, were absolutely helpless where the goods were lost or damaged, was the motive which prompted the passage of the statute now under consideration. The statute is nothing more or less than a legislative declaration that where a railroad company in its own interest, to secure business, makes a

contract to transport goods beyond its own terminus, and limits its liability to loss or damage upon its own line, in the interest of those who deal with the company, who come in contact with it as a public carrier, in the interest of shippers, that is, in the interest of the public, the railroad company making such a contract shall, when the goods are lost or damaged in transit, be required to furnish to the shipper such information as that he may make a legal demand upon those who are responsible for the loss or damage. The right to control by legislative enactment in the interest of the public a corporation of this character is unquestioned, and in the legislative control of the character indicated in the law now under consideration we see nothing unreasonable or arbitrary.    See, in this connection, Richmond Railroad Co. *v.* Tobacco Co. (Va.) 24 S. E. 261.

It is said, though, that even if the statute in question is a reasonable regulation in regard to requiring the carrier to furnish the information therein mentioned, that provision is unreasonable which fixes the time within which the information is to be furnished before the effect of the statute is to impose a penalty upon the initial carrier for the failure to give the information.  Of course, if an act of the General Assembly imposes a penalty upon an individual or corporation for a failure to perform a given act within a given time, and it is manifest that the character of the act is such that the courts could take judicial notice that it could not be performed within the time required, then it would be the duty of the courts to declare such legislation invalid as an effort on the part of the lawmaking body to deprive a person of his property without due process of law.   On the other hand, if the General Assembly has a right to declare that a person shall do a given thing, and it provides that this act shall be performed within a given time, and the court can not judicially know that it is impossible to do the thing required within the time fixed for its performance, then it is not within the power of the court to declare that the legislation is invalid upon its face.   If under the operation of such a statute in a given case it should conclusively appear that it was impossible for a person against whom proceedings were had under the statute to perform, within the time required by the statute, the act thereby imposed, the question as to whether there would be any liability under the statute would arise as a matter for decision.   In these days, when

it is a matter of such common knowledge that the courts judicially know that railroad companies engaged in the transportation of persons and freight among the several States conduct their business with such facility by means of the telegraph and other agencies, that when it becomes necessary in their own interest to secure information in regard to the commonest details of the simplest transaction they can do so in a very short space of time, a court would stultify itself that would hold as a matter of law that thirty days was not a reasonable time for a carrier whose principal office was in Georgia to secure information as to where a car-load of grapes was lost or damaged which was transported from a point in this State to Omaha, Nebraska. If information on any point involving the same amount of investigation were needed for its own business, it could be ascertained in a much less time than thirty days, and it is not unreasonable to require that it should use the same degree of diligence where one of its shippers is interested.

The case of *Wallace* v. *Railway Company*, 94 *Ga.* 732, which lays down the doctrine of "correlative liberty of silence," and that "compulsory private discovery" can not be enforced by "statutory terror," has no application whatever to the present case. This is also true of the case of Ohio Ry. Co. *v.* Lackey, 78 Ill. 55, where it was held that an act requiring railroad companies to pay the costs of inquest and the costs of burial of all persons who died on their cars was invalid, so far as it attempted to make such companies liable where they had violated no law and had been guilty of no negligence. The same is to be said of the case of Bielenberg *v.* Railway Company (Mon.), 20 Pac. 314, where it was held that a statute of Montana which provided that a railroad company which damaged or killed a horse should be liable was invalid in so far as it imposed liability upon corporations that were not negligent in the act complained of. It certainly can not be said that the statute under consideration is an impairment of the obligation of the contract made by the plaintiffs with the defendant, inasmuch as the statute was enacted long before the contract was entered into. Nor is the law under review such a regulation of commerce among the several States as to be violative of that clause of the constitution of the United States which grants to Congress the exclusive right to regulate commerce among the several States. While a regulation of the character set forth in the statute under consideration might,

in some remote degree, bear upon the matter of interstate commerce, it is in no sense such a regulation of that commerce as that the State would be inhibited from making it.    In a broad sense, any regulation which touches at all persons or instrumentalities engaged in interstate commerce would be a regulation of that commerce; still many such statutes have been held not to encroach upon the right of Congress to control the matter of commerce among the several States.    See, in this connection, Sherlock *v.* Alling, 93 U. S. 99; Smith *v.* Alabama, 124 U. S. 465; Chicago Railway Co. *v.* Solan, 169 U. S. 133; Richmond Railroad Company *v.* Tobacco Company, Id. 311; St. Joseph Railroad Co. *v.* Palmer (Neb.), 22 L. R. A. 335; Hart *v.* Railway Co., 69 Iowa, 485; Gulf Railroad Co. *v.* Crossland (Tex.), 33 S. W. 290; *Williams* v. *Fears,* 110 *Ga.* 584, affirmed in 179 U. S. 270.

2. Having reached the conclusion that the demurrer was properly overruled, it becomes necessary to determine whether the court erred in refusing to grant a new trial.    Complaint is made that the court erred in excluding the evidence of the plaintiff Murphey, to the effect that the fruit shipped belonged to his wife.    There was no error in excluding this evidence.    The plaintiffs were the shippers.    They were the persons with whom the contract of affreightment was made.    They were the consignors, and it is well settled that the shipper or consignor can bring an action against the carrier for a breach of the contract of affreightment, without reference to whether the shipper has any property, either general or special, in the goods shipped.    See *Carter* v. *Southern Railway Company,* 111 *Ga.* 38.    In *Lockhart* v. *Railroad Company,* 73 *Ga.* 472, the plaintiff was not only not the shipper, but had no interest whatever in the goods.    The act under which this suit is brought gives the right of action in terms to the shipper, and provides that the carrier shall be liable for the value of the goods lost or damaged, in the same manner and to the same extent as if the loss or damage occurred on its own line.    As the shipper had the right, in the event of loss or damage on its own line, to bring an action against the carrier under the contract, under the statute the shipper had a right to bring an action against the initial carrier upon its failure to comply with the terms of the statute.    Of course, when the shipper recovers he will hold the recovery in trust for the true owner, and there can be no additional recovery by the owner under this statute.

3. It is contended further that the court erred in rejecting certain evidence consisting of correspondence between the claim agent of the defendant and officers and agents of the lines over which the grapes were transported from Barnesville, Georgia, to Omaha, Nebraska, the correspondence consisting of letters and telegrams; and also the evidence of.the claim agent that he had charge of the tracing of the freight in controversy, that he instituted the search asked for by the plaintiffs, that he offered them the information which he had obtained just one day after the expiration of the thirty days required by the law, and that it was utterly impossible to have sooner obtained the information. While the evidence offered showed a mass of correspondence by wire and by mail, we can not say that the evidence would have authorized a finding that it was impossible for the defendant to have obtained the information within thirty days. The company seems to have obtained the information, or at least a portion of it, within thirty-one days, and it would indeed be a strain to say that it was a matter of impossibility to have obtained it earlier than this. In these days when so much can be accomplished in so short a time, and when those in charge of the affairs of the great railways of the country are in thorough communication with each other by the use of their own lines of telegraph as well as the lines of regular telegraph companies, it does seem to us to be an extraordinary claim to be made in behalf of such companies that it is an impossibility, with all of the means at their command, to locate the place at which a car-load of freight was lost or damaged in transit from Georgia to Nebraska, when such car can be transported between the two points within four or five days. If such impossibility exists, it is evidence only that those in charge of the affairs of the company have either not sufficient employees to transact the business required of the companies, or the system by which they operate is defective at some point. We have reached the conclusion that the statute is a reasonable regulation, and the companies who are amenable to it must adopt some system by which the statute can be complied with. Especially so, when there can be no question that it is within the power of the company to adopt a system by which the information can be obtained within the time fixed by law. It may be said that the ruling we now make imposes a very great burden upon railroad companies. Railroad companies are not required to issue through bills

of lading beyond their own lines, and if they do not desire to bear the burden incident to through bills of lading of this kind, the remedy is in their own hands. If a case could arise where it appeared that it was really impossible for the initial carrier to secure the information within the time fixed by the statute, another and quite a different question from the one now before us would be presented. The evidence offered in the present case did not make out a case of impossibility under any view of it. It simply demonstrated that the system of the defendant was inadequate, and railroad companies, like every one else, must adapt their systems of business to the law of the land.

4. The foregoing discussion disposes of all of the grounds of the motion for a new trial that require special notice. The requests to charge were properly refused, and the portions of the charge complained of were not erroneous for any of the reasons set forth in the motion. Counsel stated in the argument that they did not raise any question as to the amount of the verdict, nor is there anything in their briefs in reference to this subject. We find no error which would have required the judge to grant a new trial.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J. disqualified, and Lumpkin, P. J., absent.*