## SOUTHERN RAILWAY COMPANY *v.* RAGSDALE, HARPER & WEATHERS.

</div>

The tracing act of 1891 (Civil Code, §§ 2317 – 2318), properly construed, applies only to initial and connecting carriers doing business within this State, and, when so interpreted, is not such a discrimination against such carriers as to render the act unconstitutional on the ground that it denies to them the equal protection of the laws.

<div align="center">Argued February 19, — Decided March 29, 1904.</div>

Action for damages. Before Judge Reid. City court of Atlanta. March 28, 1903.

*Dorsey, Brewster & Howell, Sanders McDaniel* and *J. D. Bradwell,* for plaintiff in error. *J. F. Golightly,* contra.

Fish, P. J.    This was an action under the tracing act of 1891 (Civil Code, §§ 2317–2318).    The shipment originated outside of the State, and the notice to trace was served upon a connecting carrier within this State, which had undertaken to deliver the freight at the point of destination.    The defendant, by demurrer to the petition, raised many, if not all, of the questions in reference to the act which were involved and decided in the case of *Central of Georgia Railway Company* v. *Murphey*, 116 *Ga.* 863. So far as any questions determined in that case are concerned, counsel for the defendant state in their brief that they do not desire to again press them upon the court.    In fact counsel insist upon the determination of but one question which the demurrer raises, conceding that the decision just referred to is controlling upon all the others.    It is contended that the act should be construed to be applicable only to initial and connecting carriers who are engaged in the business of common carriers within the limits of this State, for the reason that the lawmaking power of this State has no authority to regulate or impose duties upon common carriers who operate entirely without the limits of the State.    We think this is the proper construction of the act.    See *Philadelphia Ry. Co.* v. *Venable*, 117 *Ga.* 142.    It is argued that if this be the proper construction of the act, the law imposes upon initial and connecting carriers, doing business within this State, duties and responsibilities which are not imposed upon other carriers connected with the same shipment, who are engaged in business without the limits of this State, and that this is such a discrimination against the local carriers as to deprive them of that protection of the law which the non-resident carrier handling the same shipment receives, and that for this reason the act is violative of that portion of the 14th amendment to the constitution of the United States which guarantees to all persons the equal protection of the laws.    The law applies with equal force to every carrier, engaged in business within the limits of this State, which may be one of the links in a line of carriage either beginning in this State and terminating beyond its limits, or originating without this State and terminating within its limits.    The State certainly has authority to make reasonable regulations controlling the conduct of those engaged in the business of a common carrier within its limits; and it was held in the *Murphey* case that this act was reasonable

in its terms, and was not such a regulation of interstate commerce as to be beyond the power of the General Assembly of this State. When this conclusion is reached, it seems to follow that the act does not deprive any carrier within its terms of the equal protection of the laws, in such a way as to be subject to the objection that is urged against it at this time.

It was argued that if the General Assembly had no power to impose the duty of tracing upon non-resident carriers, it had no right to impose upon resident carriers a penalty for a failure to obtain information from such non-resident carriers, when no means were furnished or could be furnished to the resident carrier for compelling the non-resident carrier to give the information necessary to enable the resident carrier to comply with the requirements of the act. This contention was made in the *Murphey* case; and it was there said, in substance, that if a case should arise where the evidence showed that it was really impossible for the carrier upon whom the notice to trace was served to obtain the information required within the time prescribed by the act, it would then be decided whether this would constitute a defense to a suit under the act. So we say now, that if in a given case it should appear that the resident carrier upon whom the notice to trace has been served has exercised due diligence in attempting to get the information, and that the failure to obtain it was not the result of its own fault or failure to use all of the means at its command to do so, a question might arise as to whether the defendant would be liable under the act. But no question of that character was involved in the *Murphey* case, nor is it involved in the case now before us. The petition alleges that no reply whatever was made to the plaintiffs' demand to trace. It might be that if it was really impossible for the carrier to obtain the information, it could with propriety be held that it had not violated the provisions of the act, on the theory that it is not to be presumed that the lawmaking power intended to impose a penalty for a failure to do a thing which was impossible of performance. But we will not now decide whether this is a proper construction of the act, or whether it amounts to a legislative determination that the information can be obtained, and that the carrier will not be heard to say that it can not.

*Judgment affirmed.    All the Justices concur.*