## 241. PENNINGTON & EVANS *v.* DOUGLAS, AUGUSTA & GULF RAILWAY COMPANY.

1. When a demurrer containing several grounds (some of the grounds being directed to the merits, and some special in their nature) is sustained and the petition is dismissed, there is no presumption that the ruling was based upon the special grounds of the demurrer rather than upon

the general, but the judgment will be treated as sustaining the demurrer as a whole and upon all of the grounds therein contained, and the judgment of dismissal will be affirmed, if this judgment was right for any reason which was presented by the general demurrer. No reference is here made to the power of this court to give direction as to amendment in connection with the judgment in such a case.

2. The nature of an action is not determined by the designation of the pleader. "It is, in fact. immaterial by what name he calls his suit, or whether he gives it any name at all." The character and classification of an action depends upon the intrinsic contents of the petition, its recitals of fact, the nature of the wrong sought to be remedied, and the quality of the remedy invoked.

3. The remedy provided in the act approved August 23, 1905 (Acts of 1905, p. 120) entitled "An act to further extend the powers of the railroad commission of this State, and to confer upon the commission the power to regulate the time and manner within which the several railroads in this State shall receive, receipt for, forward, and deliver to its destination all freights of every character, which may be tendered or received by them for transportation; to provide a penalty for noncompliance with any and all reasonable rules, regulations, and orders prescribed by the said commission in the execution of these powers, and for other purposes," is exclusive of any other mode of procedure for the collection of damages arising from a breach of the carrier's public duty to furnish cars for the transportation of freight.

Action for damages, from city court of Nashville—Judge Peeples. February 2, 1907.

Argued March 28, 1907.—Decided February 24, 1908.

*Hendricks, Smith & Christian,* for plaintiffs.

*W. H. Barrett, J. W. Quincey,* for defendant.

RUSSELL, J.   Pennington & Evans brought an action for damages against the Douglas, Augusta & Gulf Railway Company for $23,304, which was dismissed upon demurrer, and the order of the judge of the city court, sustaining the defendant's demurrer, is the error assigned.   The demurrer was predicated upon several grounds, and was sustained generally.   It appears that the plaintiffs in error, as plaintiffs in the court below, insisted that their suit was one for damages, that it was not drawn to recover a penalty, and that they disclaimed any right to recover for any penalty whatever; and the same insistence was maintained before us.   The plaintiffs in the court below stated that it was not their intention, at the time of the filing of their petition, to contend for any penalty; and they further stated that they would not, upon the trial of the case, ask for any penalty, but would ask only for

such damages, caused by the negligence of the defendant in its failure to furnish cars to plaintiffs, as they might be able to sustain by proof.

The plaintiffs' petition, as appears from the bill of exceptions (in which it is incorporated) alleges, that the defendant is a corporation with a line of railway extending through the county of Berrien, with an agent and office therein; that the defendant owns and operates a railroad for the purpose of hire and for the transportation of all manner of freight usually hauled by railroad companies, by the method of drawing flats and box-cars over said railroad; that said railway company is under the railroad commission of the State, and is amenable to its rules, orders, and regulations; that the plaintiffs are mill operators, with their sawmills located in Berrien County, at a place known as Barfield, Georgia, and are wholly dependent upon said railway company for cars and equipage for the purpose of transporting their lumber to their purchasers and customers; that on the first day of May, 1906, the plaintiffs made requisition on the defendant for five flat cars, as provided by law and as prescribed by rule 9 of the rules of the railroad commission of Georgia, promulgated and published at Savannah, Georgia, on April 6, 1906 (a copy of which requisition is attached to the petition, as "Exhibit A"), and that the said railway company made default, in that it only furnished two cars; that requisitions for cars were made from the first of May until the 27th of June, 1906, in accordance with the said rule of the railroad commission of Georgia, except that said requisition would designate whether the cars were to be boxes or flats, and the persons to whom, and the place where, and the kind of lumber with which they were to be loaded; all of which cars the defendant refused and failed to furnish; that the plaintiffs made requisition upon the railway company, as above set forth, for 594 cars, in accordance with rule 9 of the railroad commission of Georgia, which said amount of cars the railroad company failed and refused to furnish; and, after allowing the time within which to furnish said cars, as prescribed by the aforesaid rule, the plaintiffs were without the use of the said 594 cars for 23,304 days; for which they were damaged the sum of $1 per day for each car and for each day, their damage sustained thereby being the said sum of $23,304, that on the 21st of July, the plaintiffs served the defendant, as provided by law,

with the number of cars asked for in each of the several requisitions made upon the defendant from the first of May to the 27th of June, 1906, giving the character of the cars, whether box or flat, the amount of cars received on each order, and the kind of cars, the month and day received, and the number of cars short on each requisition, and the number of days each car was in default, thereby giving the thirty-days notice required by law before bringing this suit against the company; and that said defendant has failed and refused to pay the amount of damage sustained by reason of its negligent acts in failing and refusing to furnish cars as per the terms of the requisition made upon it; that the defaults in the various requisitions made upon the defendant by the plaintiffs were without the consent, fault, or neglect of the plaintiffs, and to their injury and damage in the sum aforesaid. "Exhibit A," attached to the petition, was in the following terms: "Supt. Holtzendorf, Douglas, Ga. Dear Sir: We are loading our last empty flat to Brunswick, and will be ready to go forward to-morrow, and we need more at once for loading to Brunswick, with lumber. Please place at our siding at once five empty flats that can be loaded with Brunswick loading. Thanking you in advance for cars, we are, yours very truly, Pennington & Evans."

The defendant, expressly insisting on its plea filed to the jurisdiction of the court, demurred to the petition as follows: (1) Because the right of action of plaintiffs accrued in the county court of Coffee, which is without the jurisdiction of the court. (2) Because no cause of action is set out in the petition. (3) Because the petition is duplicitous, in that it includes in one count an action in tort for alleged negligence, and an action to recover penalty under an alleged statute, and a rule of the railroad commission of Georgia. (4) Because said petition fails to set out rule 9 of said railroad commission. (5) Because the petition fails to set forth the written notices alleged to have been served. (6) Because the notices alleged to have been served upon defendant are not in compliance with said alleged rule of said commission. (7) Because said petition fails to allege that defendant had been required to show cause before the railroad commission of Georgia as to the penalty sought to be recovered in this suit, or that defendant has failed to show sufficient cause before the commission why it should not be relieved from the liabilities sought to be enforced. (10)

Because the petition fails to allege that all the cars called for were necessary to the plaintiffs, or how many cars were necessary for the proper conduct of plaintiffs' business. Upon consideration of the demurrer, the court sustained it as a whole and dismissed plaintiffs' petition. Exception is taken, by bill of exceptions, to this judgment. The judgment of the court was general. "Upon considering the within and foregoing demurrer, and after argument of counsel had thereon, it is considered, ordered, and adjudged by the court that said demurrer be and the same is hereby sustained, and the petition in said case is hereby dismissed." The demurrer contains both general and special grounds. The alleged defects pointed out by the special demurrers, perhaps, might have been remedied by amendment, but it does not appear that any amendments to the petition were offered.

1. For reasons which we shall presently state, it is immaterial what reason, suggested by the demurrer, may have controlled the lower court in the rendition of its judgment; and it is profitless to consider the several grounds of the demurrer seriatim, for the purpose of pointing out their characteristics and the proper legal effect of each upon the plaintiffs' petition. As pointed out by Judge Erskine in *Martin v. Bartow Iron Works, 35 Ga.* 323, "a special demurrer goes to the structure merely, and not to the substance, and it must distinctly and particularly specify wherein the defect lies;" but though a general demurrer is used to assail every substantial imperfection in the pleading of the opposite party, without particularizing any of them, it is not vitiated if these defects are specifically pointed out. The judgment rendered must be construed as meaning that the demurrer was sustained upon each and every ground therein contained; and if the judgment excepted to is right, beyond question, for any reason advanced by the demurrer, it can not properly be reversed. "Where a demurrer to a petition contained several grounds, some going to the merits and some special, and the court sustained "the demurrer' and dismissed the petition, there is no presumption that the ruling was based upon the special grounds of the demurrer rather than the general, but the judgment will be treated as sustaining the entire demurrer upon all of its grounds." *Gunn v. James,* 120 *Ga.* 482 (48 S. E. 148) Merrill *v.* Board of Com'rs, 7 Kans. App. 717 (52 Pac. 109), and citations. Whether the

demurrer is a general demurrer, or is both general and special, as in this case, the judgment sustaining the demurrer should be affirmed, if any of the grounds of the demurrer are good. "Where an order sustaining a demurrer to a plea is general in its terms, the judgment will be affirmed if the plea was properly stricken for any reason set forth in the demurrer, although the bill of exceptions recites that the plea was stricken for a particular reason." *Huggins v. Southeastern Lime etc. Co.,* 121 *Ga.* 311 (48 S. E. 933); *Killough v. Simmons,* 125 *Ga.* 101 (53 S. E. 819). In holding that a judgment sustaining the demurrer generally will be treated as sustaining the demurrer as a whole, upon all of the grounds therein contained, and that the judgment of dismissal will be affirmed if this judgment was right for any reason presented by the demurrer, of course no reference is made to the power, inherent in this court, of giving direction to the lower court as to the allowance of amendments in connection with our judgment in such a case.

In our view of the present case, it is only necessary to consider two substantial questions, presented by the demurrer, in its attack upon the substance of the plaintiffs' petition, in order to determine whether the judgment of the lower court was correct or incorrect. This court has more than once given its adherence to the principle announced by Judge Erskine in the *Martin* case, supra, that "all the delicately cunning and curious devices that have crept into the science of pleading" should be discouraged and discountenanced. "The law, says Lord Coke, 'speaketh by good pleading,' and the day has arrived when this wise axiom of that great master of the common law is to be interpreted liberally. This is an age of progress and utilitarianism in law as in other sciences, and it is therefore high time that the subtleties, verbosities, and useless disputations of the ancient pleader give way to common sense and common reason."

2. Our first inquiry shall be directed to determining the nature of the plaintiffs' action. The general demurrer can not be passed upon properly until this question shall be satisfactorily answered. The defendant's demurrer, as well as its argument in this court, treats the plaintiffs' petition as a suit for a penalty under the provisions of the act of 1905 (Acts of 1905, p. 120), generally known as the "Steed bill." The plaintiffs strenuously

insist that the petition seeks only the enforcement of their com-
mon-law right to damages.   But for the absolute disclaimer of the
learned counsel for the plaintiffs, of any past, present, or future
intention to claim the statutory penalty, and the earnestness and
ability with which the contention of the plaintiffs (that the action
is one for damages arising from the breach of a public duty) was
urged, we would readily have come to the conclusion that the pe-
tition was brought in pursuance of the provisions of the act of
1905.   After laborious investigation and mature consideration, we
are not only unable to disabuse our minds of the impression that
the suit must be construed as one to recover the liquidated dam-
ages provided for by the Steed bill (which are denominated as a
penalty), but we are firmly convinced that the petition, the sub-
stance of which we have heretofore quoted, can not reasonably be
construed otherwise.   It is not to be questioned that the general
right to pursue the common-law remedy and to sue for the dam-
ages arising out of the carrier's breach of duty in failing to fur-
nish means for transporting freight is not to be affected by the
mere verbiage used, if the cause of action is otherwise properly
set forth, no matter if the language of the petition be equally
applicable to some other cause of action.   This was true prior to
the passage of the act of 1905, supra, and is still true where a
petition is subject to two constructions, if, as contended for by the
plaintiffs, the act of 1905 is cumulative of the common-law remedy.
The nature of an action is not determined by the designation of
the pleader.   "It is, in fact, immaterial by what name he calls
his suit, or whether, in fact, he gives it any name at all."   The
character and classification of an action depends upon the intrin-
sic contents of the petition, its recitals of fact, the nature of the
wrong sought to be remedied, and the quality of the remedy in-
voked.   Every petition must be construed according to its own
allegations; and the light furnished by argument adds nothing to
the coloring of the picture as completed by the artist pleader.
Nor can the features of the picture be disguised by misnomer.   It
is not the name given to an action that classifies it, but the facts
set forth.   "The pleader does not characterize his action.   He
simply sets forth facts upon which he relies for recovery; and if
these facts are such as in law entitle the plaintiff to recover, it is
not necessary that the action should be classified or character-

ized by any name." *Malone* v. *Robinson,* 77 *Ga.* 719; *McNorrill*
v. *Daniel,* 121 *Ga.* 79 (48 S. E. 680) ; *City of Albany* v. *Cameron
Co.,* 121 *Ga.* 794 (49 S. E. 798).   A brief resumé of some of the
following paragraphs of the petition, containing allegations unnec-
essary to be made in a suit for damages at common law, serve to
show (whether the petition be defective, if considered as an ac-
tion to recover liquidated damages under the Steed act, or not)
that the reasonable intendment of the petition is to recover the
liquidated damages provided by the act of 1905.   In the 3d para-
graph it is alleged that the defendant is under the railroad com-
mission of Georgia and amenable to its rules,—a fact which would
be irrelevent in the common-law action for damages.   In the 4th
paragraph it is alleged that the defendant has damaged petition-
ers in the sum of $23,304; which sum, as also appears, is exactly
derivable from 23,304 days at $1 a day.   The facts stated in the
5th paragraph, that the plaintiffs are mill operators on the de-
fendant's line, and wholly dependent upon it for transportation,
would be valueless at common law, unless the defendant owed the
plaintiffs the duty of transporting their mill products.   The 6th,
7th, 8th, and 9th paragraphs all refer directly to rules and regu-
lations of the railroad commission, as follows:   that on May 1st,
1906, the plaintiffs made requisition on defendant for five flat
cars, "as provided by law and as prescribed by rule 9 of the rules
of the railroad commission of Georgia;" that during May and June
other requisitions were made according to the rules of the rail-
road commission; that 594 cars were, during May and June, called
for, and after "allowing the time within which to furnish said
cars, as prescribed by the aforesaid rule, the plaintiffs were with-
out the use of the said 594 cars for 23,304 days, and for which
they were damaged the sum of $1 per day for each car;" that the.
thirty-days notice required by law, demanding payment, has been
served on defendant, thereby complying with this prerequisite for
bringing suit.

Counsel for the plaintiffs in error insists that the allegations of
the plaintiffs bring their petition well within the rule prescribed
by § 4960 of the Code.   This section declares, that "all suits in
the superior court for legal or equitable relief, or both, shall be
by petition to the court, signed by the plaintiff or his counsel,
plainly, fully, and distinct'y setting forth his charge; ground of

complaint and demand, and the names of the persons against whom process is prayed." Counsel for the plaintiffs in error insist, that the court, treating the ordinary circumstances in this case as a permanent relation between the plaintiffs and the defendant, will take it for granted that the defendant owed the plaintiffs the duty of furnishing them cars; that the allegation that the plaintiffs were upon the road of the defendant, dependent upon it for cars, and that it failed and refused to furnish cars, is sufficient, without more, to set forth fully the breach of duty toward the plaintiffs which was violated by the defendant. In support of this proposition the cases of *Ellison* v. *Georgia R. Co.*, 87 *Ga.* 699 (13 S. E. 809), *Orr* v. *Cooledge*, 117 *Ga.* 195 (43 S. E. 527), *Seals* v. *Augusta So. Ry. Co.*, 102 *Ga.* 819 (29 S. E. 116), and *City of Columbus* v. *Anglin*, 120 *Ga.* 785 (48 S. E. 318), are cited. As before stated, the general demurrer goes to the substance of the petition; and, in testing this petition to determine whether it sets forth a cause of action for damages at common-law for the breach of the public duty of a common-carrier, the omissions from the petition are not less significant than the allegations of the paragraphs to which we have hitherto called attention. No duty of the defendant company to furnish cars is alleged. Nor is any failure to comply with this duty alleged against the defendant company, except that requisitions permitted by the rules of the railroad commission of Georgia were not complied with. There being no law of Georgia, except the act of 1905 and the rules formulated by the railroad commission, requiring a railroad company to furnish cars within a specified time, it is plain that the petition did not seek to recover damages for any failure to comply with the duty of the defendant company at common law. Nor does the petition allege that reasonable notice, or reasonable time within which to furnish cars, was given; the notice contained in "Exhibit A" is specific that the cars must be furnished at once.

A petition asking for damages upon the liability of a common carrier for the breach of a public duty, which fails to set out what specific duty was owing by the defendant to the plaintiffs, and wherein this duty was not complied with, may properly be dismissed upon general demurrer. In an action for damages sought to be recovered for the breach, by a carrier, of its legal duty to furnish a means of transportation of freight (inasmuch as there

43

is no absolute duty upon a railroad company at common law to furnish cars), it must be made to appear that the plaintiffs had goods they desired to ship, that such goods were ready for shipment, and were offered for shipment, that reasonable notice of these facts had been brought to the carrier and it had been given reasonable notice to furnish cars, and that reasonable time had been allowed in which to procure cars. Elliott on Railroads, §§ 1470, 1476; Hutchinson on Carriers (3d ed.), §495, note 6. The wording of the requisition shows an attempt to comply with rule 9 of the railroad commission, adopted under the supposed power of the Steed act. In rule 9 the provision as to free time and the requirement as to thirty-days demand for payment are embodied. We know of no provision, aside from the Steed act, giving authority to the railroad commission to fix rules regulating the furnishing of cars, or affixing the "penalty per day per car to be paid by said railroad company." The requirement that the requisition for the cars shall be in writing, which the petition states was complied with, is also one of the provisions of the act of 1905.

Considering the petition in this case as an action to recover penalties or liquidated damages provided for by the Steed act of 1905, it was subject to general demurrer, because it did not allege that the defendant had an opportunity to be heard before the railroad commission. Section 3 of the act of 1905 provides, that "before any railroad company is subjected to the penalties provided by this act, said railroad commission shall require said railroad company to show cause therefor; and if sufficient cause is shown, then said company shall be relieved from any further liability under this act." Though this section has been repealed by section 11 of the act approved August 23, 1907, to revise and enlarge and more clearly define the powers, duties, and rights of the railroad commission (Acts 1907, p. 78), still an allegation of compliance with it was necessary at the date of the rendition of the judgment complained of. This view of the case, however, we perhaps can not consider, because of the insistence of plaintiffs in error that they claim nothing under the provisions of the act of 1905. Taking this view of the case, we think the decision of the court in sustaining the general demurrer was right, because the petition was fatally defective for lack of any allegation setting forth distinctly

the duty of the defendant to furnish cars to the plaintiffs at places which this court judicially knows to be beyond the limits of the line of the defendant company; and furthermore, that the cars were not of unusual size, and that the defendant could have reasonably complied with the plaintiff's need for cars. Gann v. Chicago Ry. Co., 65 Mo. App. 670; Ayers v. Chicago Ry. Co., 71 Wis. 372 (37 N. W. 432); Galena Ry. Co. v. Rae, 18 Ill. App. 488; Pittsburg Ry. Co. v. Racer, 10 Ind. App. 503 (37 N. E. 280, 38 N. E. 186); Richardson v. Chicago Ry. Co., 61 Wis. 596. At common law there is no duty upon a railroad company to furnish cars for shipment beyond its own line. *Central Ry. Co.* v. *Augusta Brokerage Co.,* 122 *Ga.* 650 (50 S. E. 473); *State* v. *Wrightsville R. Co.,* 104 *Ga.* 437 (30 S. E. 891); *Central Ry. Co.* v. *Murphey,* 116 *Ga.* 866 (43 S. E. 265).

3. We think, however, that the judgment sustaining the general demurrer, regardless of any other reason, is right because the remedy provided in the act of 1905, supra, entitled "An act to further extend the powers of the railroad commission of this State, and to confer upon the commission the power to regulate the time and manner within which the several railroads in this State shall receive, receipt for, forward, and deliver to its destination all freights of every character, which may be tendered or received by them for transportation; to provide a penalty for non-compliance with any and all reasonable rules, regulations, and orders prescribed by the said commission in the execution of these powers, and for other purposes," is exclusive of any other mode of procedure for the collection of damages arising from a breach of the carrier's public duty to furnish cars for the transportation of freight. In other words, the passage of that act, and the establishment of rules, regulations, and orders thereunder by the railroad commission of this State, does not provide a cumulative remedy to shippers, but suspends the operation of the common law, so far as the subject-matter embraced therein is concerned, and, so long as it is the law, furnishes the sole and exclusive remedy for failure to furnish cars.

We bear in mind the fact that the Steed act does not, in express terms, refer to or repeal existing rights of action as to the same subject-matter, and we do not overlook the principle that repeals by implication are not favored. But it is also to be borne in mind

that so far as the shipper is concerned, the recovery to which he may be entitled, under the provisions of the Steed act, is not penal in its nature. The $1 per day per car is not a penalty; the fixing of this sum is merely a liquidation of the damages, or a legislative substitute for damages. The $1 (or $23,304, as the case may be), if the defendant has been shown to be liable under the provisions of the act, is liquidated damages. The term "penalty" has been variously defined by the courts of last resort in this country. It is applied in the sense of punishment for crime; it may mean, in a civil action, a sum of money payable as an equivalent for an injury, or a sum of money imposed by statute, to be paid as a punishment for the commission or omission of a certain act. The term is also used to designate a gross sum of money to be paid for the non-performance of an agreement; and the legal operation of this is to cover the damages which the party in whose favor the consideration is made may have sustained from the breach of a contract by the opposite party. In several States the words "penalty" and "forfeiture" are used as synonymous and interchangeable. The act of 1905, supra, itself contains a penalty in its fourth section. In this State, however, statutory penalties, whether affixed to violations of civil or of criminal statutes, convey the idea of punishment, either for the breach of a public duty by omission or commission, or designate the punishment to be meted out to one who has committed a crime under the laws of the State. So far as those penalties which are civil in their nature are concerned, a prescribed sum is recoverable only by the State and at its instance. The penalty of $250 mentioned in the Steed act is in this class.

We are constrained to hold that the fixing of $1 per day, to be recovered by a shipper for each car demanded and which is not furnished, is an effort on the part of the legislature to liquidate the damage to the shipper; because of the fact that the damage which might result from the failure to furnish the car is variable and uncertain. It was clearly the intention of the legislature, by statute, to make certain what would otherwise be uncertain, and incapable or very difficult of computation or proof, and to make uniform and constant what would otherwise be variable. And while this process of liquidation generally has reference to contracts, and relates to the damages resultant from their breach, and which are

uncertain or can not be accurately estimated, still there is no rea-
son why the General Assembly can not as well make certain by liq-
uidation the damages arising from a breach of a public duty, by
statute declared to be such, which comes within the same category
as to uncertainties and difficulty of estimation.   Even the use of
the term "penalty," where, from the nature of the subject-matter,
the application of the sum to be paid and the surrounding circum-
stances show the sum payable for a breach of a contract or of a
public duty to be liquidated damages, does not have the effect of
causing such liquidated damages to become a penalty.   The act
of 1905 (omitting the fourth section, repealed by the act of 1907)
is to be construed, as to its purpose and effect, not only by a con-
sideration of the intention of the legislature as derivable from its
express terms, but also by keeping in view existing public condi-
tions and the end sought to be attained.   In the first section of
the act the railroad commission of this State is "vested with full
power and authority to make, prescribe, and enforce all such rea-
sonable rules, regulations, and orders as may be necessary in order
to compel and require the several railroad companies in this State
to promptly receive, receipt for, forward, and deliver to destination
all freights of every character which may be tendered or received
by them for transportation; and as well such reasonable rules,
regulations, and orders as may be necessary to compel and require
prompt delivery of all freights, on arrival at destination, to the
consignee."   Section 2 of the act provides, that "whenever a
shipper shall require of a railroad company the placing of a car
or cars to be used in car-load shipments, then, in order for the
consignor or shipper to avail himself of the forfeitures or penal-
ties prescribed by the rules and regulations of said railroad com-
mission, it must first appear that such shipper or consignor made
written application for said car or cars to said railroad; provided
further, that such railroad commission shall, by reasonable rules
and regulations, provide the time within which said car or cars
shall be furnished after being ordered as aforesaid, and the penalty
per day per car to be paid by said railroad company, in the event
such car or cars are not furnished as ordered, and provided further,
that in order for any shipper or consignor to avail himself of the
penalties provided by the rules and regulations of said railroad
commission, such shipper or consignor shall likewise be subject,

under rules to be fixed by said commission, to the orders, rules, and regulations of said railroad commission." The third section, now repealed, requires the railroad commission to give the company an opportunity of showing cause, before subjecting it to the penalties provided by the act, and, upon sufficient cause, to relieve the company from liability.

As we have heretofore said, one proper criterion for determining the meaning of a legislative enactment is to consider the general scheme and purport of the proposed legislation. It is obvious, both from the act of 1905 and from the more comprehensive enactment of 1907 (Acts of 1907, p. 72), which was intended greatly to enlarge the scope of the powers of the railroad commission, and especially its jurisdiction in the matter of imposing penalties on the various common carriers of the State, that it was the purpose of the legislature, in the passage of the act of 1905, to provide, not a cumulative remedy, but an exclusive means for the recovery of the damage inflicted upon a shipper by the failure of the carrier to furnish cars, as well as a penalty (in the fourth section of the act) which would punish the delinquent in a criminal way for the dereliction in public duty. While the term *penalty* is used to denominate a recovery which may be had in behalf of the aggrieved party, it is evident that the term is not used to convey any idea of punishment, disassociated from the thought of reparation for private injury by reason of the fact that an express penalty, recoverable by the State, is provided by section 4 of the original act. Even if the provision of $1 per day were considered a penalty, however, there is high authority for holding that this would be exclusive of any common-law right; because, when a penalty is recoverable by the aggrieved party, this is clearly intended as compensation; and damages, under our code (Civil Code, §3905), are nothing more nor less than compensation for the injury done. Endlich, Interp. Stat. §470. The same author expresses the opinion that when the penalty is recoverable by the aggrieved party, this right of recovery is exclusive of any common-law right, except where the statute in terms preserves the existing common-law right. The purpose of the General Assembly, then, was to fix a reasonable amount as damages recoverable by the shipper, as compensation to him for the injury done him by the carrier, by a failure to furnish cars; and $1 per car per day was deemed a rea-

sonable amount of compensation, considering the difficulty of
proving the exact amount of damage in such cases, and looking at
the same time to uniformity. The act also declares the State's
policy to allow the railroad commission to pass primarily upon the
reasonableness of the petitioner's demand and of any excuse of-
fered by the carrier for non-compliance, and also provides a pen-
alty to protect the interest of the general public against the rep-
etition of a similar offense. The $1 per day per car is for rep-
aration; the penalty of $250 is for punishment.

Our view, that in so far as compensation is afforded for the in-
jured by the Steed act, it is exclusive of the common-law remedy,
is sustained by the opinion of the Supreme Court of the United
States in the two recent cases of Texas & Pacific Ry. *v*. Abilene
Cotton Oil Co., 204 U. S. 426, and Texas & Pacific Ry. Co. *v*.
Cisco Oil Mill, 204 U. S. 449. In the Abilene Cotton Oil Co. case
it is held that when a right is given by the statute and a specific
remedy proposed, or a new power, and also the means of execu-
tion, the right can be vindicated in no other way than that pre-
scribed by the act. Mr. Justice White, discussing the effect of
the act to regulate commerce, generally known as the interstate-
commerce act, upon the claim · asserted by the Oil Company
(which was similar to the contention of the plaintiffs in error in
this case), and the right to the relief sought,—in other words,
the scope and effect of the act to regulate commerce upon the
right of a shipper to maintain an action at law to recover dam-
ages because of the exaction of an alleged unreasonable rate, says:
"Without going into detail, it may not be doubted that at common-
law, where a carrier refused to receive goods offered for carriage
except upon the payment of an unreasonable sum, the shipper had
a right of action in damages. It is also beyond controversy that
when a carrier accepted goods without payment of the cost of car-
riage, . . and made an unreasonable exaction as a condition of
the delivery of the goods, an action could be maintained to re-
cover the excess over a reasonable charge. And it may further
be conceded that it is now settled that even where, on receipt of
goods by a carrier, an exorbitant charge is stated, and the same is
coercively exacted, either in advance or at the completion of the
service, an action may be maintained to recover the overcharge. 2
Kent, Com. 599, and note *a*; 2 Smith, Lead. Cas., pt. 1, 8th ed.

Hare *v.* Wallace notes, p. 457." Procceding, the learned Justice alludes to the fact that the act to regulate commerce (as in the case of the Steed act), did not in so many words abrogate the common-law right, and if that right was taken away by the act of Congress, it must be conceded that the result was accomplished by implication, and holds, that "a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy." He then proceeds to interpret the act in question, and to give an outline of its general scope, pointing out the rights which it was intended to conserve, and the wrongs it proposed to redress, as well as the remedies created to accomplish the purposes which the lawmakers had in view, and calls attention to the fact that by section 22 the existing appropriate common-law and statutory remedies were saved. The court then calls attention to the fact that the act in question not only awarded reparation to a particular shipper, but also provided a means for compelling the carrier to desist from the violation of the act in the future, and concludes that "if the power was left in courts to grant relief on complaint of any shipper, . . and if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of the court." And under the provision of the Steed act, where it is provided that both shipper and carrier shall be subject to the rules of the commission, and that the power shall be lodged with the commission to pass primarily upon the reason of the carrier's failure to comply with its duty, the same thing may be said as was held in the Abilene case. Alluding to the argument that the same purpose might be served by the action of the court as by the submission of the question first to the railroad commission, the court says: "This suggestion [that the court might cause the same result as the commission] . . only serves to illustrate the absolute destruction of the act and the remedial provision which it created which would arise from the recognition of the right asserted. For if, without previous action by the commission, power might be exerted by courts and juries generally to determine the reasonable-

ness of an established rate, it would follow that unless all courts reach an identical conclusion a uniform standard of rates would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached by the various courts. . . The power of the courts to award damages to those claiming to have been injured, as provided in the section, contemplates only a decree in favor of the individual complainant, redressing the particular wrong asserted to have been done, and does not embrace the power to direct the carrier to abstain in the future from similar violations of the act; . . which power . . is conferred by the act upon the commission in express terms. In other words, we think that it inevitably follows from the context of the act that the independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act, conferred by the 9th section, must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the commission, and, therefore, does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of." The court then proceeds to say that the conclusion to which it is constrained by the consideration of the text of the statute finds support in quite a number of authorities which are cited. Among them are Swift v. Philadelphia Ry. Co., 64 Fed. 59; Kinnavey v. Terminal Ry. Co., 81 Fed. 802; Cincinnati R. Co. v. Interstate Commerce Com., 162 U. S. 184; L. & N. R. Co. v. Behlmer, 175 U. S. 648; Interstate Com. Com. v. L. & N. R. Co., 190 U. S. 273, in which it was held that by the effect of the act to regulate commerce, it was peculiarly within the province of the commission to primarily consider and pass upon a controversy concerning the unreasonableness per se of the rates fixed in an established schedule, and that it was the duty of the courts, where the commission had not considered such a disputed question, to remand the case to the commission, to enable it to perform its duty, —a conclusion wholly incompatible with the conception that courts, in independent proceedings, were empowered, by the act to regulate commerce, equally with the commission, primarily to determine the reasonableness of rates. To the contention that this construction may deprive shippers of some rights, the court replies as follows: "The proposition that if the statute be construed as

depriving courts generally, at the instance of shippers, of the power to grant redress upon the basis that an established rate was unreasonable, without previous action by the commission, great harm will result, is only an argument of inconvenience which assails the wisdom of the legislation or its efficiency and affords no justification for so interpreting the statute as to destroy it."

While the question dealt with in the Abilene case is the unreasonableness of rates, and in the instant case the question is one of failure to furnish means of transportation, the ruling is, upon principle, applicable to the case at bar. Damages are alike recoverable in both instances at common-law, but in the Steed act, as. in the interstate-commerce act, the power is primarily lodged in the railroad commission to pass upon the claim. In the exercise of that wise public policy which seeks not only uniformity and equality in freight tariffs, but abhors discrimination in the furnishing of means of transportation, and demands, for a violation of either duty on the part of the carrier, not only reparation to the individual injured, but the application of deterrent agents, in the form of punishment for the carrier's breach of duty, the power lodged in the commission must be exclusive, and the remedy, passed in conformity with this power, must likewise be exclusive. This principle is not new to the jurisprudence of our own State. It has been held by the Supreme Court in *Jones* v. *Stewart,* 117 *Ga.* 977, and in *Brewer* v. *Nutt,* 118 *Ga.* 257, that when one method of enforcing a law has been provided, none other can be employed.

We conclude, then, that, judged by its contents, the petition in this case must be considered as an action brought to recover the damages of $1 per day per car, provided by the Steed act; that as such it was demurrable, because it was not alleged that the plaintiffs were subject to the rules of the railroad commission, nor that the railroad commission had primarily passed upon the claim for damages; that even if the petition be considered as an action to recover damages at common-law, it was generally demurrable, even if no statute had been passed excluding this remedy, and especially because, by the passage of the act of 1905, the common-law right to recover damages for a failure to furnish cars was superseded by statute. No amendment that the plaintiffs could offer could transform the action into (what they insist it to be) a suit for damages

under the common law. *W. & A. R. Co.* v. *Exposition Mills*, 81 *Ga.* 522 (7 S. E. 916), *Expo. Mills* v. *W. & A. R. Co.*, 83 *Ga.* 442 10 S. E. 113; *Kavanaugh* v. *Southern Ry. Co.*, 120 *Ga.* 67 (47 S. E. 526). The judgment of the lower court sustaining the demurrer generally might well have been sustained upon the principle that being plainly an action for the penalty or damages provided by the Steed act, it was incapable of being transformed into a common-law action for damages against the carrier; and we have gone as fully as we have into the question only because of the importance of upholding the declared policy of the legislature as embodied in the Steed act, and the importance of the consequences entailed by its enactment. *Judgment affirmed.*