THE GEORGIA RAILROAD AND BANKING CO. *v.* MURRAH.

The first and the last carrier being independent carriers, and having between them no contract relation, and the bill of lading issued by the former being silent as to any contract to ship the goods as " released" or at a reduced rate, and the last carrier having paid charges and earned freight without notice of any contract outside of the bill of lading, the right to hold the goods for payment of the charges advanced and freight earned, on the basis of ordinary rates, was not affected by such secret outside contract. There can

be no recovery for damage to the goods sustained without fault or negligence of the last carrier, whilst they were rightfully detained to await payment as preliminary to making a delivery to the consignee.

April 25, 1890.

Damages. Negligence. Contracts. Carriers. Railroads. Before Judge COBB. City court of Clarke county. September term, 1889.

On September 24, 1887, the plaintiff delivered to the agent of the Missouri Pacific Railway Company, at Austin, Texas, four boxes of goods consigned to himself at Athens, Georgia. According to plaintiff's testimony, that agent said he did not know the rate for the shipment, but $1.50 per hundred would more than cover it, and plaintiff had better pay too much than too little, otherwise the goods might stop on the road when they had been carried as far as the freight was paid; and therefore plaintiff paid him the amount named, making $15.45 for the whole shipment, and shipped the goods "released." (This testimony was admitted over objection.) But the receipt or bill of lading in evidence, which the agent gave him, only undertook to transport them from Austin to Shreveport, La., and delivered to the consignee or a connecting common carrier; and stipulated that for all loss or damage occurring in the transit of the goods the legal remedy should be against the particular carrier only in whose custody they might actually be at the time of the happening thereof, and that the Missouri Pacific company assumed no other responsibility for their safety or safe carriage than might be incurred on its own road. It specified no rate of freight, but acknowledged receipt of $15.45 "prepaid on account." They were forwarded, and were delivered to the defendant in Atlanta by an intermediate railway company, with collect charges of $15.53. The defendant paid this amount and hauled the goods to Athens, charging for this haul $2.80,

which, added to what it had paid out in Atlanta, made $18.33 which it required the plaintiff to pay before de-livering the goods to him, although he exhibited to the Athens agent the bill of lading he received in Austin. This was in October, 1887. The regular rate for this shipment from Austin to Athens was $13.22 if shipped released, or $33.78 if not released. The Athens agent told the plaintiff what the rate for the goods shipped released between these places was, and advised him to write to the defendant's general freight agent in Augusta; and the plaintiff and the agent both did this. The reply, made to the Athens agent on January 16, 1888, was that the company could not deliver the shipment on the bill of lading and run its chances of getting freight back from connections. The defendant had not seen the bill of lading before taking the goods and hauling them to Athens. It had no contract relations whatever with the Missouri Pacific company. In March, 1888, the plaintiff paid the $18.33 required by the defendant, received the goods from it, and sued it for the overcharges; but before the trial it refunded them to him, together with $2.33 of the amount he had paid in Austin, " on authority from and repaid by shipping road." The goods had been damaged while held by the defendant; and on August 28, the present action was brought therefor and for the alleged wrongful withholding. A verdict was rendered for the plaintiff, and to the refusal of a new trial on various grounds the defendant excepted.

BARROW & THOMAS and J. B. CUMMING, for plaintiff in error.

THOMAS & STRICKLAND, contra.

BLECKLEY, Chief Justice.

It is not pretended that the contract made by the first carrier to transport the goods as " released " and at

a reduced rate, was inserted in the bill of lading, or was known to the last carrier until after that carrier had completed the transportation and paid the back charges. So far as appears, no way-bill or freight-list which came forward with the goods indicated such a contract, or any reduced rate of freight. Under these circumstances, to hold all parties to the bill of lading and to the implications of law arising upon it, would be fair, at least to the consignee. Construed with no reference to extrinsic evidence, the bill of lading certainly imports, not a "released" or reduced liability on the part of the carrier, but the strict liability which the law imposes upon common carriers as such. To escape that liability, had the goods been damaged or destroyed whilst in transit over its road, the last carrier would not have been allowed to set up the parol contract made between the shipper and the first carrier. On the other hand, the bill of lading being silent as to the rate of freight, the law implies an undertaking to pay at the usual and ordinary rate. So strong is this implication, that there is good authority for saying that to rebut or vary it parol evidence of an express contract fixing a lower rate, is not admissible. Louisville, &c. R. R. Co. v. Wilson, 119 Ind. 359, s. c. 40 Am. & Eng. R. R. Cases, 85. Though the bill of lading omits to specify either a rate or an aggregate amount as agreed upon, it bears an affirmative indication that the rate contemplated was not the reduced rate applicable to "released" shipments; for the sum prepaid was more than that rate would yield, and the prepayment was expressed to be "on account." These words, "on account," seem naturally to import partial payment as opposed to payment in full. Tested by the ordinary rate, the prepayment was but partial payment; tested by the reduced rate it was overpayment. To which rate it should be referred as against a party who acted without notice of any outside stipulation, admits of no reasonable doubt.

The evidence is express and uncontroverted that between the first carrier and the last there was no contract relation.  This means, as we construe it, that there was no arrangement or understanding by which they were connected as common or joint contractors in the business of transportation, but each conducted business on separate account and independently of the other.  It would follow that neither had implied authority from the other to make contracts in its behalf.  The result would be that the first carrier was not the agent of the last, but of the shipper.  Briggs *v.* R. R. Co., 6 Allen, 246; Patten *v.* R. R. Co., 29 Fed. Rep. 590; Price *v.* R. R. Co. (Col.) 37 Am. & Eng. R. R. Cases, 626; Potts *v.* R. R. Co. (Mass.) 3 *Ib.* 424; *Bird* v. *R. R.*, 72 *Ga.* 655.  The right of the last carrier to pay the charges of previous carriers, and hold the goods for reimbursement, as well as for his own share of the freight earned, is undoubted.  Hutch. Car. §478; 2 Rorer R. R. 1263; Schoul. Bail. & Car. §610; Knight *v.* R. R. Co. (R. I.) 9 Am. & Eng. R. R. Cases, 90.  It would seem that the right rests on the theory that each successive carrier is an agent of the consignor or consignee to make such advances.  Schoul. Bail. & Car. §610.  That the charges, if within the ordinary rates, and apparently regular, are not cut down, nor the right to hold the goods defeated, by the mistake or omission of a previous independent carrier, of which the last carrier, without fault or negligence on his part, has no notice, see Wolf *v.* R. R. Co., 22 Kan. 659; Wells *v.* Thomas, 27 Mo. 17; Schneider *v.* Evans, 25 Wis. 241; Crossman *v.* R. R. Co., 149 Mass. 196, s. c. 40 Am. & Eng. R. R. Cases, 136; 2 Rorer R. R. 1263; Schoul. Bail. & Car. §610; Evansville, &c. R. R. Co. *v.* Marsh, 57 Ind. 505; Union Express Co. *v.* Shoop, 85 Pa. St. 325.

Under the facts of the present case, it is manifest that the Georgia R. R. Co. was wholly without fault or neg-

ligence in paying the back charges which came forward with the goods, in transporting the goods over its own line as "unreleased" freight, and in demanding reimbursement and compensation accordingly. It had the right to hold the goods, and was under no duty to deliver them to the consignee without the payment of its demand in full. The whole case is an error. There can be no recovery, and to discuss separately the errors assigned, would accomplish nothing.

*Judgment reversed.*