SOUTHERN RAILWAY CO. *v.* FARRAR LUMBER CO.

Excluding from consideration hearsay testimony, which has no probative value, the verdict directed by the court was demanded under the other evidence introduced upon the trial.

JUNE 21, 1911.

Trover. Before Judge Fite. Whitfield superior court. July 23, 1910.

*Maddox, McCamy & Shumate,* for plaintiff in error.

HOLDEN, J. The Southern Railway Company transported a car of shingles from Jellico, Tennessee, to Dalton, Georgia, for delivery to the Farrar Lumber Company, and insisted, as a condition precedent to delivery, that the consignee pay a freight charge of something over $400, which included its own charges for transportation over its line and an advance payment made by it to the L. & N. Railroad Company of about $370. The Lumber Company tendered the amount of freight charges on the shipment from Halsey, Ky., to Dalton, Ga., demanded the goods, and, upon the Southern Railway Company refusing to comply with this demand, brought trover to recover them. Upon the trial of the case the court directed a verdict in favor of the plaintiff, and the Railway Company excepted.

It appears from the evidence, that, several months prior to the shipment from Jellico to Dalton, the lumber company procured the shipment of the shingles from the State of Washington, consigned to its order at Halsey, Ky., to which point they were carried by various connecting lines, arriving at destination by the L. & N. R. R.  The secretary of the lumber company testified that that company directed the L. & N. to deliver the shingles to the Red Ash Coal Company. at Halsey, and that this was done; that the coal company, to which company the lumber company sold the shingles, was to pay the freight, which the lumber company was to deduct from the invoice price of the shingles; that he did not authorize the railroad company to deliver them without collecting the freight charges; and that the railroad company extended credit to the coal company for the freight.  It appears from the evidence that the coal company used something over 30,000 of the shingles, and that the shipment remained in their possession for some length of time—several months, as we infer from the testimony.  Thereafter, about the first·of February, 1909, the unused shingles were carried from Halsey to Jellico, and the joint agent of the Southern Railway and the L. & N. at the latter point billed them to the lumber company at Dalton.  This agent testified that he "couldn't say by what authority they were brought there [Jellico]; the conductor brought them in there.  When I sent these shingles to Dalton I made an entirely new transaction out of it; they were in an entirely different car from the cars on which the original charges were based."  He further testified that he paid the advance charges (which included everything except the freight from Jellico to Dalton) to the L. & N. Railroad, and tacked these charges onto the freight bill to be collected by the Southern Railway at Dalton. The secretary of the lumber company testified, that, learning that the coal company had become involved financially, he commenced taking steps to protect his company with respect to the shingles, and accepted a proposition of the manager of that company to take back unused shingles and credit the account of the coal company therewith; that soon thereafter he was notified that the L. & N. Railroad had seized the shingles, and he employed a lawyer at Jellico to stop them there, "and finally the railroad company turned them over to us at Jellico, and I instructed our lawyer to have them forwarded here to Dalton.  .  .  I did get my shingles

back at Jellico, and they were forwarded to Dalton by the Southern Railroad. . . I wanted the Southern Railway to bring those shingles from Jellico to Dalton for me, and I pay the freight from there here; and I so directed it, and it was done. When these shingles reached Dalton the agent of the Southern Railway very promptly placed them at our side-track." No attempt has been made to detail the evidence, but the foregoing substantially states the facts from the standpoint of the lumber company.

The Southern Railway Company contends, that, after a small portion of the shingles had been used, the coal company became involved financially, and the L. & N. Railroad Company retook the remainder of the shingles, the coal company paying it the contract price for those which it had used. This contention is made in the brief of counsel, where it is further said: "The coal company advised Farrar of the situation, and he agreed to take back the shingles in settlement of his account against the coal company. Farrar then directed the shingles shipped to Dalton, Ga., which was done." This contention has its basis in statements contained in certain letters which were introduced in evidence by the plaintiff, and is supported only by this hearsay evidence, which has no probative value.

In a letter from the freight claim agent of the L. & N. Railroad Company to the lumber company, introduced in evidence, this statement appears: "I understand the contents of this car [referring to the car in which the shingles originally reached Halsey, Ky.] was sold to the Halsey Red Ash Coal Co., Halsey, Ky., and that consignees opened this car without authority and removed the shingles without payment of freight." Discarding this purely hearsay testimony, along with other testimony of the same character, the proved facts in the record make substantially the following case: The lumber company sold a car of shingles to the coal company. The shipment was consigned to the lumber company at Halsey, and it directed the railroad company to deliver it to the coal company, it not appearing that any instructions were given with respect to the collection of freight. The railroad company delivered the shingles and gave credit for the freight. Civil Code (1910), § 2741, declares: "The carrier has a lien on the goods for the freight, and may retain possession until it is paid, unless this right is waived by special contract or actual delivery." The

hearsay evidence before adverted to is not proof that the coal company obtained possession by a trespass, and there is no evidence that there was any fraud on the carrier whereby it was induced to part with the goods. The delivery to the coal company under the facts established constituted a waiver of its lien for freight charges. Afterwards—just how and when it does not clearly appear—the L. & N. regained possession of the greater portion of the shingles. There is no proof other than hearsay how this possession was acquired. It appears from the positive testimony in behalf of the plaintiff that it took back the unused shingles from the coal company, agreeing to credit its account with them, and thus obtained the title thereto, the title to the shingles having gone into the coal company upon the railway company delivering them to it under the instructions of the lumber company. As against this title, the plaintiff in error shows only a possession obtained from the L. & N. Railroad for the purposes of shipment; and this possession the lumber company claims to be derived through it, as its secretary testified that the shingles were turned over to it by the L. & N. at Jellico, and were to be shipped to the lumber company at Dalton. The L. & N. Railroad, having once lost its lien by an actual delivery of the freight at Halsey, could not revive that lien merely by afterwards getting possession of the shingles. Jones on Liens, § 310. The question as to whether or not the carrier still had a lien for the original freight charges would be the same in this case, whether or not the original delivery to the coal company at Halsey was delivery to it as purchaser, passing title, or a delivery to it as agent of the lumber company, title remaining in the latter. It is enough that there was an actual delivery under such circumstances as to occasion a loss of the lien. Even if the delivery was to the agents of the lumber company, so that the latter still owed the freight as a debt, this fact could not avail the defendant in the present action; since the plaintiff in either event would have the title to the goods, the defendant only the right to retain possession until the payment of the amount of its lien for freight. It being undisputed that the plaintiff tendered all freight charges other than those accruing on the original shipment from the State of Washington to Halsey, Ky., a verdict in its favor was demanded, and the court did right in so directing.       *Judgment affirmed. All the Justices concur.*