## SEABOARD AIR-LINE RAILWAY *v.* DIXON.

1. Where shipments of lumber in car-load lots were consigned to a person at a named city, and were transported to their destination over the railroad on which they were shipped, and the consignee was given notice and afforded due opportunity to receive and unload the lumber, the liability of the railroad company as a common carrier ceased. In the absence of any law, valid rule of the railroad commission, contract, or custom raising such a duty, it was not bound, at the request of the consignee, to deliver the cars to another carrier, to be transported to a different part of the same city, where the consignee desired to ship such lumber by steamship.
2. If the consignee relied on a usage or custom for the purpose of raising such a duty, he would have to take such usage or custom as it existed.
NOVEMBER 14, 1913.

Injunction. Before Judge Charlton. Chatham superior court. August 14, 1913.

Dixon, doing business as the Dixon Lumber Company, obtained an interlocutory injunction against the Seaboard Air-Line Railway to restrain the defendant from collecting and enforcing demurrage on cars of lumber which were consigned to the plaintiff

at Savannah and carried to that place, but which the plaintiff desired to have transported to steamship wharves in another part of the city, which were reached by the tracks of another railroad company. The defendant was also enjoined from "collecting or attempting to collect such demurrage by refusing to carry such cars before demurrage is paid." The defendant denied that it was a common carrier in connection with the other railroad company from its yards to the steamship wharves, and asserted that the car-loads of lumber came over its road, consigned to the plaintiff at Savannah; and that upon arrival at their destination, notice was given to the plaintiff, and demurrage began to run after forty-eight hours. It further alleged that the only practice as to the delivery of such cars to the Central of Georgia Railway Company was, that the plaintiff would give orders to the last-named company to take from the defendant certain designated cars, that the agent of the Central Railway Company would then transmit to the agent of the defendant such instructions as to the cars desired, and that the defendant would thereupon deliver the cars so ordered to the Central Railway Company for delivery to the Merchants and Miners Transportation Company, or at whatever point the plaintiff designated in his order to the Central Railway Company. To the grant of the injunction the defendant excepted. The other facts are sufficiently stated in the opinion.

*Anderson, Cann & Cann,* for plaintiff in error.
*Osborne & Lawrence,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. If the plaintiff had cause for injunction against the defendant railroad company, it was because of some impending wrong which the latter was about to commit on the former. The alleged wrong was a violation of the duty of the railroad company as a common carrier. If there was any such duty, it must have been imposed by legislative enactment, by valid rule of the railroad commission, by contract, or by custom. Was such a duty, arising from any of these sources, shown?

In *Coles* v. *Central Railroad &c. Co.,* 86 *Ga.* 251 (12 S. E. 749), *State* v. *Wrightsville &c. R. Co.,* 104 *Ga.* 437 (30 S. E. 891), and *Central Ry. Co.* v. *Murphey,* 116 *Ga.* 866 (43 S. E. 265, 60 L. R. A. 817), it was held that there was no law which required a railroad company to make a contract to forward goods beyond its own

line. The question of the power of the legislature or the railroad commission was not determined. Under these rulings, whether or not it will adopt a custom of issuing through bills of lading, at least as to intrastate freight, is optional, not compulsory. *Central Ry. Co.* v. *Augusta Brokerage Co.*, 122 *Ga.* 648 (50 S. E. 473, 69 L. R. A. 119). Even had it been shown that the company had on certain occasions transported cars from the initial point of the shipment to a terminal point beyond its line, this would not alone suffice to impose on it the duty of doing so. *Coles* v. *Central Railroad &c. Co.*, supra. But there was no evidence that the railroad company had transported any lumber beyond its own yards except upon request or order from the Central Railway Company. When the Seaboard Air-Line Railway received at various points carloads of lumber consigned to Dixon at Savannah, and transported such cars to the point of destination, that is to the usual place of delivery of such cars on its line in Savannah, and gave the consignee due notice and opportunity to receive and carry away the lumber, its liability as a common carrier ceased, in the absence of a law, valid rule of the railroad commission, or custom or usage to deliver the cars to another company for transportation to a different part of the same city. No statute or rule of the railroad commission raising such a duty has been shown. Civil Code § 2655 does not apply to such a case. These were not through shipments of goods which had not reached their destination, and the shipments were not consigned to any point on the Central Railway or beyond the terminus of the Seaboard Air-Line Railway; nor is this a question of delivery to be made to a consignee on a private siding on the line of the road of a connecting carrier. The defendant, having complied with its contract, was not bound to deliver the loaded cars to another railroad to be transported by its line across the city, except as the case may be affected by a custom. It was alleged by the plaintiff that the Seaboard Air-Line Railway and the Central of Georgia Railway Company were, as common carriers, engaged in the business of transporting goods from the yards of the former to the wharves of steamship companies which were reached by the line of the latter. But the evidence failed to show that they jointly conducted the business of making such transportation. There being no law requiring such delivery by the Seaboard Air-Line Railway of cars which had reached their destina-

tion to another carrier for more convenient delivery to the same consignee at the steamship wharves, unless it appeared that there was a custom or usage of such generality as to become binding, the Seaboard Air-Line Railway would not be liable for a failure or refusal to make such delivery to the other carrier. Melbourne v. L. & N. R. Co., 88 Ala. 443 (6 So. 762); Palmer v. Atchison &c. R. Co., 101 Cal. 187 (35 Pac. 630).

2. In so far as a custom or usage is relied on by the plaintiff to impose a duty on the Seaboard Air-Line Railway, he must rely on the custom as proved. This was, that, upon application by the Central of Georgia Railway Company, the Seaboard Air-Line Railway would deliver cars of lumber to the former to be transported to the steamship company's wharf. The Seaboard Air-Line Railway collected a charge for this service and paid it to the Central of Georgia Railway Company, receiving no compensation for itself. It did not appear that either the steamship company or the Central of Georgia Railway Company had at the wharf any yards or provisions for receiving and holding quantities of lumber until they could be loaded on a ship. It has been held that a steamship company is not compelled to receive more freight than it has means of carrying. *Ocean Steamship Co.* v. *Savannah Locomotive Works &c. Co.,* 131 *Ga.* 831 (63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265, 15 Ann. Cas. 1044). It can not be that the lumber dealer would have the right to compel the Seaboard Air-Line Railway, after carrying the freight to its destination, to send it forward to the steamship wharf, regardless of the ability of the latter to receive it. If this dealer had that right, so had every other dealer in the city of Savannah. As there was no through shipment or contract to transport the lumber to the steamship wharf, but only to the city of Savannah, and as the Seaboard Air-Line Railway completed its contract of transportation, and as the plaintiff must rely, not upon any contract or legislative act or rule of the railroad commission, but upon custom, as raising a duty on the part of that company to deliver the cars to another carrier for more convenient delivery to him in another part of the city, he must rely on the custom as proved. And as proved, the duty on the part of the Seaboard Air-Line Railway to deliver cars of lumber to the Central of Georgia Railway Company did not arise until notice from the latter, upon application of the lumber dealer

to the steamship company or to the Central of Georgia Railway Company.

It is argued that this works a great hardship on the plaintiff, as he is compelled to pay demurrage, in order to have the cars, which arrive at Savannah loaded with lumber, remain on the tracks of the Seaboard Air-Line Railway until called for. But the plaintiff is not compelled to do this. He ships the lumber to Savannah. When it arrives at its destination he can receive it, and reship it when he desires to do so. If, instead of unloading the lumber and keeping it in his yard, he prefers to let it remain upon the cars, it is at his desire.

It follows from what has been said, that the grant of an interlocutory injunction restraining the Seaboard Air-Line Railway from collecting and enforcing demurrage upon car-loads of lumber which had been .transported to the destination thereof, and which the consignees desired that company to have carried to the steamship wharves, and from collecting or attempting to collect such demurrage as might accrue before notice from the Central of Georgia Railway Company, was erroneous. The ruling here made renders it unnecessary to consider whether or not the injunction granted was mandatory in character.

*Judgment reversed. All the Justices concur.*