14896.   TAYLOR *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. While a bill of lading does not necessarily determine the local or for-
eign character of the shipment, it is prima facie evidence on the sub-
ject; and in the absence of proof, direct or circumstantial, that an in-
terstate movement was in the contemplation of the parties when the
goods were delivered for carriage, a bill of lading for a purported intra-
state shipment will not, without further evidence, be presumed to have
issued for an interstate shipment. "There is no presumption that a
transportation when commenced is to be continued beyond the State
limits."

2. Whatever right of diversion, in the absence of provision therefor in the
contract, a consignor of goods to himself or agent may have under the
laws of Georgia, no right to divert can be claimed after arrival of the
goods at the destination first agreed upon. A further shipment will
require a new contract.

3. Where goods have been shipped from one point to another in this State,
consigned from the shipper to himself, and where, on the arrival of the
goods at the point of destination, the shipper-consignee is afforded an
opportunity to receive delivery, but nevertheless orders the shipment
diverted to another carrier for further transportation, the liability of
the first carrier on complying with such order is determined. Having
completed its contract, it does not extend the relation as carrier merely
by a delivery to the other carrier designated.

4. In such a case between the shipper and the first carrier the acts of
Congress in regard to interstate transportation are inapplicable, al-
though the second carrier may have received the. shipment for carriage
to a point beyond the State limits.

5. The evidence in this case showed, as between the plaintiff and the de-
fendant carrier, a contract for an intrastate shipment, and that the
liability of the carrier was ended when it delivered the goods to
another carrier at destination for transshipment upon the order of the

plaintiff, who was both consignor and consignee. The damage complained of having occurred after delivery by the defendant as the plaintiff's forwarder or agent to another carrier, liability as alleged was not proved; and the court did not err in awarding a nonsuit.

6. Furthermore, a party who lays his case against a railroad company on the theory of a breach of an express interstate contract of affreightment does not establish his case as laid on proving that the carriage to the ultimate destination was effectuated by two separate contracts, one being express and intrastate, and the other implied and interstate.

DECIDED DECEMBER 7, 1923.

Certiorari; from Fulton superior court—Judge Humphries. June 7, 1923.

*Carl B. Copeland, G. N. Bynum,* for plaintiff.

*Little, Powell, Smith & Goldstein,* for defendant.

BELL, J. Jeff A. Taylor brought a suit against the Central of Georgia Railway Company in the municipal court of Atlanta, for damages alleged to have resulted from a breach of a contract of carriage. The petition alleges that on August 1, 1922, the plaintiff delivered to the defendant railway company at Buena Vista, Georgia, a carload of watermelons, consigned in the bill of lading to S. W. Bacon Produce Company, Atlanta, Georgia, which was merely his agent, and that when the melons arrived in Atlanta on August 2 the shipment was diverted and reconsigned to himself at Chattanooga, Tennessee, on his instructions to agents of the defendant; that the melons were not delivered in Chattanooga until August 7, whereas they should have been delivered by August 4; and that they arrived in Chattanooga in a damaged condition, as a result of the defendant's negligence in failing promptly to transport the same from Atlanta to that point. The measure and extent of the damage are set forth. The suit would make a case of continuous carriage by the defendant from Buena Vista to Chattanooga, interrupted only by the reconsignment. It does not appear therefrom that any other carrier was concerned. There was no demurrer. At the close of the evidence upon the trial the court awarded a nonsuit. The plaintiff's certiorari was dismissed by the superior court of Fulton county, and he excepted.

The testimony of the plaintiff, the only witness, showed that when the melons arrived in Atlanta "the Central of Georgia Railway Company, on his orders, diverted it over the N., C. & St. L. Railroad to Chattanooga, Tenn." The plaintiff "saw the car of

melons in the watermelon yard of the Central of Georgia Railway Company in Atlanta, Georgia. . . The melons were in good condition when they arrived in Atlanta. . . So far as he knew, the Central of Georgia delivered the watermelons in good condition to the N., C. & St. L. Railroad." The bill of lading covering the shipment from Buena Vista to Atlanta was introduced, and contained no agreement for the defendant to do more than to transport and deliver the melons to the consignee in Atlanta. No new bill of lading was issued for the further shipment from Atlanta to Chattanooga. The entire freight charges from Buena Vista to Chattanooga were paid by the plaintiff to the delivering carrier in Chattanooga, upon a bill for freight, $20.45, advances, $40.61; total, $61.06. The plaintiff testified, "that when he shipped the melons from Buena Vista, Georgia, he had an idea of shipping them elsewhere, if he could not dispose of them in Atlanta." Without detailing the further evidence, it may be said that the plaintiff's case was made out, provided no infirmity is disclosed in the proof as stated above.

We think that the shipment from Buena Vista to Atlanta was purely intrastate. "Goods are in interstate commerce when they have been delivered for continuous transportation to a point of destination in another State. Texas &c. R. Co. v. Sabine Tram Co., 227 U. S. 111, 122 (33 Sup. Ct. 229, 57 L. ed. 442) ; Southern Pacific Terminal Co. v. Interstate Commerce Com., 219 U. S. 498, 527 (31 Sup. Ct. 279, 55 L. ed. 715) ; Coe v. Errol, 116 U. S. 517 (6 Sup. Ct. 475, 29 L. ed. 715). In order for a shipment, thus destined from the beginning for such continuous transportation, to be interstate in character, it is not required that it be originally routed by the initial carrier to a point of destination beyond the limits of the State, since the nature and essential character of the transportation is the controlling factor. Texas &c. R. Co. v. Sabine Tram Co., supra. See also Gulf &c. Ry. Co. v. Texas, 204 U. S. 403, 414 (27 Sup. Ct. 360, 51 L. ed. 540) ; Ill. Cent. R. Co. v. DeFuentes, 236 U. S. 157 (35 Sup. Ct. 275, 59 L. ed. 517) ; Penn. R. Co. v. Clark, 238 U. S. 456 (35 Sup. Ct. 896, 59 L. ed. 1406)." Davis v. Phillips, 27 Ga. App. 814 (109 S. E. 924).

The form of the bill of lading is not necessarily determinative of the question of the local or foreign character of the shipment. Exportation is not begun until goods are committed to the common

carrier for transportation out of the State to the State of their destination, or until they have started on their ultimate passage to that State. Coe v. Errol, 116 U. S. 517 (29 L. ed. 715). Even though the bill of lading may call for a shipment from one point to another in the same State, it may be shown that an interstate or foreign movement was contemplated or reasonably to be anticipated by the parties, and thus that the shipment was in fact interstate. This is the true test. Railroad Com. of Ohio v. Worthington, 225 U. S. 101 (56 L. ed. 1004); Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111 (57 L. ed. 443); Bracht v. San Antonio &c. R. Co., 254 U. S. 489 (65 L. ed. 367). While the rulings by this court on the same subject in *Augusta Brokerage Co.* v. *Central of Ga. Ry. Co.,* 5 *Ga. App.* 187, were believed in *Davis* v. *Phillips,* supra, to be inaccurate, "there is no presumption that a transportation when commenced is to be continued beyond the State limits." Gulf &c. Ry. Co. v. Texas, 204 U. S. 404, 415 (51 L. ed. 540).

Here, so far as appears by the evidence, neither the shipper nor the carrier had in contemplation any movement beyond the destination specified,—namely, Atlanta,—and the contract between them must be determined from the original bill of lading and the local laws and regulations. See Bracht v. San Antonio &c. R. Co., supra. Although the plaintiff testified that he had an idea of diverting the shipment to some other point, he does not say that such other point was beyond the State limits, nor even that such probable purpose on his part was in the knowledge or contemplation of the carrier.

When goods in carload lots are consigned from one point to another in this State and transported to their destination over the railroad on which they are shipped, and the consignee is given notice and afforded an opportunity to receive and unload, but orders a delivery to some other person, which is made, the liability of the railroad company as a common carrier ceases. Cf. *Seaboard Air-Line Ry.* v. *Dixon,* 140 *Ga.* 804 (79 S. E. 1118). It appears in this case that the plaintiff had notice of the shipment and an opportunity to receive it in Atlanta, the original destination, but desired a further transportation to a point beyond the State. This required a new contract.

In addition to what is contained in the above statement and pre-

ceding what is there quoted in reference to the same matter, the plaintiff testified that "when the watermelons got to Atlanta he asked the Central of Georgia Railway Company to divert them to him at Chattanooga, Tennessee, in direct route from Buena Vista, Georgia." He does not say that the company assented. The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague, or equivocal. *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (1) (49 S. E. 294) ; *Steele* v. *Central of Ga. Ry. Co.,* 123 *Ga.* 237 (1) (51 S. E. 438). The request which the plaintiff made was an offer to extend the relation of carrier on the part of the defendant, so as to make it continuous from Buena Vista to Chattanooga. The offer does not appear to have been accepted, but on his order shipment was diverted to another railroad. For that purpose the defendant acted only as forwarder or agent. Gulf &c. Ry. Co. *v.* Texas, 204 U. S. 404 (51 L. ed. 540) ; Bracht *v.* San Antonio &c. R. Co., 254 U. S. 489 (65 L. ed. 367). This ruling is sustained also by the decisions of the Supreme Court of this State. See *Seaboard Air-Line Ry.* v. *Friedman,* 128 *Ga.* 316 (1) (57 S. E. 778), and the cases there cited.

In Pere Marquette Railway Co. *v.* French, 254 U. S. 538 (65 L. ed. 391), the shipment "having reached Louisville, its destination named in the bill of lading, it was physically delivered by the Big Four, upon the request of one Bindner [acting for the holder of the bill of lading], to the Southern Railroad, to be forwarded to Dumesnil." The Supreme Court of Michigan held that the Big Four, in sending the car over the Southern to Dumesnil at the request of Bindner, made, not a delivery, but an irregular reconsignment. The Supreme Court of the United States, however, differed from this conclusion, and, speaking through Mr. Justice Brandeis, said: "Whatever name he used in referring to the act of forwarding the car, the Big Four when it [surrendered] possession of the car to the Southern at Bindner's request, terminated its relation as carrier; just as it would have done if, at his request, it had shunted the car onto a private industrial track, or had given the control of it to a truckman on the team tracks. Having brought the goods to the destination named in the bill of lading, the carrier's only duty under its contract was to make a delivery at that place; and it could make that delivery by turning the goods over

to another carrier for further carriage. Compare Bracht *v.* San Antonio &c. R. Co., decided by this court January 3, 1921, 254 U. S. 489, ante, 366 (41 Sup. Ct. Rep. 150) ; Seaboard Air-Line R. Co. *v.* Dixon, 140 *Ga.* 804 (79 S. E. 1118) ; Melbourne *v.* Louisville & N. R. Co., 88 Ala. 443 (6 So. 762). The fact that, in forwarding the car, the Big Four used the original waybill, striking out the word 'Louisville' under the 'destination' and substituting 'Dumesnil, Ky. So. R. R.', is of no significance. The shipment from Louisville to Dumesnil was a wholly new transaction. In turning over the car for this new shipment, the railway made a disposal of it in assumed termination and discharge of its obligations, which was, in legal contemplation, a delivery." We think that this ruling is quite apposite to the question in hand. It will be noticed that the decision of the Supreme Court of this State in the *Dixon* case is cited among the authorities. In the Alabama case of Melbourne *v.* Louisville & N. R. Co., cited in the same connection, it was said: "The owner of goods shipped—and prima facie the consignee is the owner—may change his instructions as to their destination, and substitute a different place of delivery; but this, we apprehend, he must do during the transit, and not after their destination has been reached and the terms of the carrier's obligation have been fulfilled." Mr. Hutchinson states the rule to be that the owner cannot change the destination and require delivery somewhere else, except upon the basis of a new contract, where the carrier has completed his undertaking and carried the goods to the destination first agreed upon. See 2 Hutchinson on Carriers (3d ed.), § 660. Thus, continuous shipment from Buena Vista to Chattanooga was not effectuated merely by a diversion not exercised until the goods had arrived at the original destination. It is unnecessary for us to decide to what extent the right of a consignor who is also the consignee to divert the shipment may prevail in this State, independently of provision therefor in the contract, but we are satisfied that no such right can be exercised upon the basis of the original bill of lading, after the shipment has once arrived at the destination originally specified.

The fact that the carriage charges of both railroads were paid to the delivering carrier in Chattanooga does not of itself determine that the shipment was entire from Buena Vista to Chattanooga. "The right of the last carrier to pay the charges of pre-

vious carriers, and hold the goods for reimbursement, as well as for his own charge of the freight earned, is undoubted." *Georgia Railroad Co.* v. *Murrah,* 85 *Ga.* 343, 347 (11 S. E. 779) ; *Seaboard Air-Line Ry. Co.* v. *Southern Flour & Grain Co.,* 138 *Ga.* 604 (75 S. E. 654). If this principle should be applicable only in cases of connecting carriers (and this we do not think is such a case,—see the *Dixon* case, supra), then the failure of the Central of Georgia Railway Company to collect its charges in Atlanta had merely the effect of a waiver of its lien. *Southern Ry. Co.* v. *Farrar Lumber Co.,* 136 *Ga.* 479 (71 S. E. 769).

The melons were in good order when the plaintiff saw them in the possession of the defendant in Atlanta. He does not claim that they were thereafter damaged in its possession, but even if such claim should be made, it could not stand without evidence, because of the presumption that the ultimate carrier would not have received them in bad order. Cf. *Atlanta & West Point R. Co.* v. *Broome,* 3 *Ga. App.* 641 (4) (60 S. E. 355).

The only shipment undertaken by the defendant, or in which it was concerned as a carrier, being purely intrastate, the act of Congress of June 29, 1906 (34 Stat. 593, c. 3591; Interstate Com. Act., 20 a.), amending the act of February 4, 1887 (24 Stat. 379, c. 104, U. S. Comp. St. 1913, 8592, pars. 11, 12), providing that any common carrier receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder for any damage caused to the property by it or any carrier to which the property may be delivered or over whose lines it may pass, is wholly inapplicable. The shipment being intrastate, and the defendant having made the equivalent of a delivery to the shipper at the destination agreed upon in the contract, it was not liable for subsequent damage. *Seaboard Air-Line Ry.* v. *Dixon,* 140 *Ga.* 804, 805 (79 S. E. 1118). The act of the General Assembly of August 18, 1906 (Civil Code, § 2777), does not require a different conclusion. The facts in the *Dixon* case arose several years after the passage of this act.

This case is clearly distinguishable from *Baltimore & Ohio R. Co.* v. *Montgomery,* 19 *Ga. App.* 29 (90 S. E. 740). In that case the original contract was interstate, and was subject of course to the provisions of the act of Congress above referred to. The ques-

tion there was, whether the defendant was the *initial carrier* under an interstate shipment. The question here is, was there ever a contract of interstate carriage between the parties?

As has been stated, no bill of lading was issued from Atlanta to Chattanooga. The plaintiff in error has called attention to the fact that a bill of lading is not an indispensable requisite to a valid contract of affreightment. This is true. *City of Bainbridge* v. *Smith,* 13 *Ga. App.* 790 (1) (79 S. E. 1130). But the defendant was not a party to the implied contract upon which the plaintiff relies. The plaintiff cannot consistently claim that there was a contract for continuous shipment from Buena Vista to Chattanooga, and rely upon an express contract to Atlanta and an implied contract from Atlanta to Chattanooga. We have seen that the original contract was terminated in Atlanta. We have also observed that no new contract was made between the plaintiff and the defendant for the further shipment, but that the defendant was merely an agent or forwarder in delivering the goods to the Nashville, Chattanooga and St. Louis Railroad. Of course, if we could hold that the transaction between the plaintiff and the defendant in Atlanta had the effect of making a new contract for transportation by the defendant to Chattanooga, the liability of the defendant would probably be shown, but this would not have prevented the nonsuit.

Let us assume for the moment that we are in error in holding that the defendant was merely the plaintiff's agent or forwarder from Atlanta, and grant that the defendant undertook the further transportation. This is the effect of the contentions of the plaintiff in error upon the evidence. The averments of his suit do not make such a case, but are laid upon the theory of an interstate shipment, a continuous movement from Buena Vista to Chattanooga. One contract only is alleged, predicated upon the bill of lading and a diversion. Proof of two separate contracts, one express and the other implied, one intrastate and the other interstate, would vary materially from the averments of the complaint. We believe that if the plaintiff's own contentions as based upon his evidence were assumed to be correct he still would have failed to prove the case which he laid. The plaintiff must recover upon the cause of action as laid in the petition. If he sued upon an express contract, he could not recover upon an implied one. *Seaboard Air-*

*Line Ry. Co.* v. *Henderson Lumber Co.,* 28 *Ga. App.* 391 (111 S. E. 220), and cases cited; *Seaboard Air-Line Railway* v. *Friedman,* 128 *Ga.* 316 (1) (3) (57 S. E. 778).

The defendant in error has urged that the judgment of nonsuit was right for the further reason that the suit was not brought in the proper county. This court judicially knows that the principal office of the Central of Georgia Railway Company, which is a corporation of this State, is located in Chatham county. *Central of Ga. Ry. Co.* v. *Dickerson,* 15 *Ga. App.* 293, 298 (82 S. E. 942); *Central of Ga. Ry. Co.* v. *Kuhns Lumber Co.,* 16 *Ga. App.* 700 (86 S. E. 56). The petition did not allege that the contract upon which the suit was founded was either made or to be performed in Fulton county. The courts of Fulton county did not have jurisdiction. *Wright* v. *Southern Railway Co.,* 7 *Ga. App.* 542 (2) (67 S. E. 272); Civil Code (1910), § 2798; *Bracewell* v. *Southern Ry. Co.,* 134 *Ga.* 537 (68 S. E. 98). This is so even under the act of Congress of July 29, 1906. *Central of Ga. Ry. Co.* v. *Touchstone,* 148 *Ga.* 861 (98 S. E. 485). This defect was apparent upon the face of the petition and could have been reached by demurrer. *Payne* v. *Chambliss,* 27 *Ga. App.* 374 (5) (108 S. E. 472); *Robertson* v. *Tallulah Falls Ry. Co.,* 29 *Ga. App.* 530 (4) (116 S. E. 65). Having concluded that the judgment of nonsuit was right upon the evidence, we do not deem it necessary to enter upon a decision of whether a defect appearing in the petition may be considered in connection with the evidence in passing upon a judgment of nonsuit, although it would seem to be clear that such a defect when standing alone would furnish no ground for a demurrer to the evidence, or nonsuit, but should in practice be taken advantage of in some other way. *Kelly* v. *Strouse,* 116 *Ga.* 872 (4) (43 S. E. 280).

The judge of the superior court properly dismissed the certiorari.

*Judgment affirmed.    Jenkins, P. J., and Stephens, J., concur.*